J-S09023-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHARLES SARGENT | : | |
| | : | |
| Appellant | : | No. 692 EDA 2021 |

Appeal from the Order Entered March 29, 2021,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0011441-2014.

BEFORE:   LAZARUS, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED MAY 26, 2022**

Charles Sargent appeals from his March 6, 2018 life sentence without the possibility of parole imposed after his conviction for first-degree murder, 18 Pa. C.S.A. § 2502(a).  After careful review, we affirm.

The following factual history is taken from the findings of the trial court: Sargent left his job as a club bouncer on the night of July 13, 2013.  He took a cab to an area known for prostitution where he was introduced to Ms. Diamond Williams.  Williams was a transgender female and biological male.[1] They then took the cab back to Sargent's home where he lived with his

---

[*] Former Justice specially assigned to the Superior Court.

[1] The Trial Court Opinion refers to Diamond Williams as "her" and "she," and we will do so here.

girlfriend, Veronica Johnson, and her son, Lamar Johnson. Sargent agreed to pay Williams for oral sex. After engaging in oral and anal sex in Lamar Johnson's bedroom, Sargent claimed to have then realized Williams was male and admitted to slamming Williams' head against the wall in a fit of anger. The impact left a hole in the wall as well as traces of Williams' blood and hair. Sargent claimed that Williams then drew a knife and tried to attack him, but he put Williams in a headlock, causing her to drop the knife and fall to the ground. The knife was never found. After kicking her a few times, Sargent stated that he believed Williams was about to get up, so he ran downstairs and grabbed a screwdriver. Sargent then returned upstairs, and upon seeing Williams trying to stand up, fatally stabbed her in the head with the screwdriver.

At about 8:00 AM on July 14, 2013, Veronica Johnson arrived at Sargent's home after working a night shift. She witnessed Sargent walking down the stairs naked, and he told her to leave. Ms. Johnson refused to leave and later saw Sargent dragging "what appeared to be a man's body wrapped in her son's sheets" down the stairs, which he left near the door to the basement. Sargent said that he had to go to his father's home for a while and then threatened Ms. Johnson, saying "[t]hat's right. You going to be so nosey. This is going to be you next, you and your children." When Sargent later returned from his father's residence, he carried a protective suit used for asbestos work and a large roll of plastic. He then proceeded to drag the body

down to the basement.  Soon, Sargent reemerged and grabbed a large axe, after which Ms. Johnson heard repeated loud thudding noises coming from the basement.

On either July 14 or 15, 2013, Ms. Johnson and her daughter investigated the home when Sargent was absent.  They found a purse, clothes, and a wig, none of which belonged to them.  They also discovered several blood-stained items, including a screwdriver, a hammer, and a pair of underwear.  Ms. Johnson also recovered a used condom, which later tested positive for DNA from Sargent and Williams, from the trash of the upstairs bathroom.  In the basement, Ms. Johnson saw bloodstains on the floor and trash bags sealed with duct tape.

Ms. Johnson spoke to Sargent on July 15, 2013 about what had happened.  After suggesting that Sargent killed Williams to stop her from telling others that Sargent had sex with another man, Sargent denied it and said that Williams had stolen several thousand dollars' worth of drugs while Sargent was previously incarcerated.

On July 17, 2013, Ms. Johnson told her son, Lamar, what happened. Lamar then entered his room and noticed a strange smell, wet spots on the carpet, new sheets on his bed, unfamiliar clothing on the floor, a new hole in the wall, and a bloodstain on his mattress.  Lamar then contacted the police. A subsequent law enforcement analysis of the blood found on the items and in the residence determined that none of it belonged to Sargent.

Eventually, police arrested Sargent on July 19, 2013 pursuant to an arrest warrant for making terroristic threats against Ms. Johnson. After being given Miranda warnings, Sargent confessed to killing Williams, dismembering her body, and dumping her body parts in a vacant lot. Remains were recovered from the lot and from a sealed bag found floating in the Schuylkill River,[2] all of which belonged to Williams.

Sargent represented himself at trial and asserted he killed Williams in self-defense. On March 6, 2018, a jury found Sargent guilty of first-degree murder.[3] Subsequently, he was sentenced to life without parole for the murder charge.

Sargent originally filed untimely post-trial motions on March 19, 2018. His post-sentence and appeal rights were reinstated *nunc pro tunc* on November 6, 2020. His amended post-trial motions were denied by operation of law on March 29, 2021.

Sargent filed this timely appeal. Sargent and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

---

[2] Williams' pelvic region, which had been placed in a sealed plastic bag and dumped in the Schuylkill River, was independently discovered by law enforcement. Trial Court Opinion, 7/8/21, at 8.

[3] Sargent pled guilty to possession of an instrument of crime, abuse of corpse, and terroristic threats, and does not appeal his convictions or sentences for those charges, 18 Pa. C.S.A. §§ 907(a), 5510 and 2706(a)(1), respectively.

On appeal, Sargent challenges the weight and sufficiency of the evidence presented at trial and raises several evidentiary errors. Sargent's Brief at 5–6. Each issue will be addressed in turn.

**Sufficiency of the Evidence**

In his first issue, Sargent argues the evidence presented at trial was insufficient to support his conviction because the Commonwealth failed to disprove his self-defense claim beyond a reasonable doubt. Specifically, he claims that the Commonwealth was unable to overcome Sargent's evidence that Ms. Williams tried to attack him with a knife and put Sargent in fear for his life. Sargent's Brief at 21–22.

Our review of challenges to the sufficiency of the evidence is *de novo*, and "[e]vidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000). This Court must construe the evidence "in the light most favorable to the verdict winner." ***Id.***

To convict a defendant of first-degree murder, 18 Pa. C.S.A. § 2502(a), the Commonwealth must prove that "(1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and a specific intent to kill." ***Commonwealth v. Padilla***, 80 A.3d 1238, 1244 (Pa. 2013). Both malice and specific intent to kill can be "inferred from the use of a deadly weapon upon a vital part of the victim's body." ***Id.***

A defendant can claim that the killing was lawful and justified as self-defense, in which case the burden shifts to the Commonwealth to prove: (1) that the defendant did not reasonably believe it was necessary to kill in order to protect himself against death or serious bodily harm, or that the defendant used more force than was necessary to save himself from death, great bodily harm, or the commission of a felony; (2) that the defendant provoked the use of force; or (3) that the defendant had a duty to retreat and that retreat was possible with complete safety. **See** 18 Pa. C.S.A. § 505(b)(2), **Commonwealth v. Burns**, 765 A.2d 1144, 1149 (Pa. Super. 2000).

The trial court held that the Commonwealth presented sufficient evidence both to support Sargent's conviction for first-degree murder and disprove his claim of self-defense. It noted that Sargent's testimony indicated he possessed a specific intent to kill, as he was angry after discovering Ms. Williams was a biological male, smashed Ms. Williams' head against the wall in a fit of rage, kicked her when she was on the ground, and retrieved a screwdriver from downstairs that he then used to stab Ms. Williams in the skull. Trial Court Opinion, 7/8/21, at 11. These admissions are sufficient to for a jury to infer Sargent's intent to kill, and we agree with the trial court's conclusion.

Likewise, the trial court also determined there was sufficient evidence to prove beyond a reasonable doubt that Sargent provoked the use of force by initially assaulting Williams. First, Sargent's testimony established that he

was the initial aggressor. Trial Court Opinion, 7/8/21, at 12. Sargent admitted at trial that after he discovered Williams was a biological male, he may have pushed her head into the bedroom wall, leaving behind blood stains and hair. N.T., 3/5/18, at 141; N.T., 2/27/18, at 144. The evidence also showed that he violated his duty to retreat[4] before using deadly force, making the killing unlawful. Trial Court Opinion, 7/8/21, at 12. This evidence, construed in the light most favorable to the Commonwealth, establishes beyond a reasonable doubt that Sargent did not act in self defense when he killed Williams, and we will not disturb the jury's verdict on sufficiency grounds.

## Weight of the Evidence

In his second issue, Sargent asserts that the trial court erred in denying his post-sentence motions and not granting him a new trial because his conviction was against the clear weight of the evidence. Sargent's Brief at 23. He reasons that, because he admitted to killing Williams and provided an accurate description of his efforts to dispose of the body and clean up his residence, the fact-finder was required to believe his version of events supporting a self-defense claim. Sargent's Brief at 23. We disagree.

Allegations that a verdict is against the weight of the evidence are first addressed to the trial court, and we review its decision to grant or deny a new

---

[4] 18 Pa. C.S.A. § 505(2)(ii) imposes a duty upon the person using deadly force to retreat from his dwelling if he is the initial aggressor.

trial under an abuse of discretion standard. *Widmer*, 744 A.2d at 753. "Where the record adequately supports [the decision of] the trial court, the trial court has acted within the limits of its discretion." *Commonwealth v. Clay*, 64 A.3d 1049, 1054 (Pa. 2013) (citations omitted). A trial court's decision to grant or decline to grant a new trial may only be reversed "when the verdict is so contrary to the evidence as to shock the conscience." *Commonwealth v. Johnson*, 668 A.2d 97, 101 (Pa. 1995).

Sargent essentially asks this Court to reweigh the evidence and the credibility of witnesses, which is not our role. *Commonwealth v. DeJesus*, 860 A.2d 102, 107 (Pa. 2004) ("This Court cannot substitute its judgment for that of the jury on issues of credibility.") Instead, we examine the record to determine if the trial court abused its discretion in denying the defendant's motion for a new trial. *Clay*, 64 A.3d at 1055.

We conclude that the trial court's refusal to grant a new trial was not an abuse of discretion. As Sargent admitted to killing Williams, he primarily relied upon a claim of self-defense, which the Commonwealth had the burden of disproving. His evidence consisted of little more than his own testimony; the knife Williams allegedly attacked him with was never found and none of the blood tested at the residence belonged to Sargent. Trial Court Opinion, 7/8/21, at 14. While Sargent presented evidence of injuries he sustained, their nature was not so overwhelmingly indicative of an attack from Williams. *Id.* The Commonwealth's evidence, including photographs, testimony, and its

cross-examination of Sargent, established that Sargent was the first aggressor and had the opportunity and obligation to retreat but failed to do so. *Id.* The trial court reasoned that this evidence was consistent with the jury's guilty verdict and its apparent finding that Sargent's account of the incident was not credible, and so its verdict did not "shock one's sense of justice." *Id.* The trial court's determination is supported by the record, and it did not abuse its discretion by denying Sargent's request for a new trial.

**Evidentiary Issues**

Sargent's remaining issues address evidentiary rulings of the trial court. Our standard of review for evidentiary rulings is a narrow one limited to abuse of discretion. *Commonwealth v. Hoover*, 107 A.3d 723, 729 (Pa. 2014) ("It is well established that the admissibility of evidence is within the discretion of the trial court, and such rulings will not form the basis for appellate relief absent an abuse of discretion.")

1. Evidence of Prior Incarceration

In his first evidentiary issue, Sargent requested a new trial on the basis that the trial court improperly allowed the Commonwealth to read a witness' prior statement into evidence. According to Sargent, the Commonwealth impermissibly indicated that Sargent was previously incarcerated. We find the trial court did not abuse its discretion in finding no merit to this claim.

Evidence of a defendant's prior criminal acts is generally inadmissible except when introduced for certain limited purposes, including to establish

motive or intent. ***Commonwealth v. Williams***, 660 A.2d 1316, 1321 (Pa. 1995). The probative value of such evidence must still outweigh the "potential for unfair prejudice." Pa. R.E. 404(b)(2). When considering the prejudicial effect of evidence of past bad acts, this Court has applied a balancing test that considers "the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility." ***Commonwealth v. Page***, 965 A.2d 1212, 1221 (Pa. Super. 2009) (citing McCormick on Evidence, § 190 (6th ed. 2006)).

During trial, the Commonwealth asked Ms. Johnson about Sargent's initial explanation of the killing, but she could not remember the details. N.T., 2/27/18, at 57. After laying the foundation for its introduction, the Commonwealth read aloud Ms. Johnson's original statement to investigators, in which she stated that Sargent claimed Williams had stolen $5,000 in drugs while Sargent was in jail. ***Id.*** at 61.

However, as the trial court noted, Sargent failed to make a timely and appropriate objection to this testimony at trial. Trial Court Opinion, 7/8/21, at 15. Consequently, we agree with the trial court that he has waived this issue. Pa. R.A.P. Rule 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.")

Even if Sargent had properly objected, we would agree with the trial court's alternate conclusion that the claim has no merit. The trial court reasoned that Sargent's explanation for killing Williams was relevant to his intent, and his own reference to being incarcerated provided context to his claim that Williams had previously stolen $5,000 in drugs. Trial Court Opinion, 7/8/21, at 15. Furthermore, no other prejudicial details of Sargent's incarceration were introduced at trial, such as when he was released, or how long he was imprisoned, with the exception of his prior aggravated assault conviction that was properly admitted as impeachment evidence. **See** N.T. Trial, 3/5/18, at 120. The mere fact that Sargent had served time in jail for an unspecified offense is not so prejudicial as to outweigh the probative value of his initial explanation for the killing, and the trial court did not abuse its discretion by allowing the statement to be read to the jury.

2. Admission of Photographs

In his next issue, Sargent claims that the trial court should not have allowed photographs of Williams' dismembered body parts to be shown to the jury. Sargent asserts they were too prejudicial and irrelevant because Sargent admitted to dismembering Williams and disposing of her remains in a vacant lot. Sargent's Brief at 33. We find no error.

When the Commonwealth offers photographic evidence of an injured or homicide victim, the trial court must engage in a two-part analysis to determine whether such evidence is admissible:

First a [trial] court must determine whether the photograph is inflammatory. If not, it may be admitted if it has relevance and can assist the jury's understanding of the facts. If the photograph is inflammatory, the trial court must decide whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors.

*Commonwealth v. Murray*, 83 A.3d 137, 157 (Pa. 2013) (citations omitted).

A trial court abuses its discretion when it is "indifferent" to the photograph's prejudicial effect or "where the precautions taken were not commensurate with the nature of the scene depicted." *Commonwealth v. Ballard*, 80 A.3d 380, 393 (Pa. 2013).

In this case, the parties agree that the photographs were inflammatory. The photographs depicted Williams' leg, feet, torso, head, and other indeterminate body parts in a severely decomposed state. Maggots were visible in some photographs. The parties instead dispute whether the photographs' evidentiary value clearly outweighed their prejudicial effect.

Sargent likens the facts to those in *Commonwealth v. LeGares*, 709 A.2d 922 (Pa Super. 1998), which involved the admission of an autopsy photograph in a homicide trial. In *LeGares*, this Court first held that a color photograph depicting the wired-together head of the victim after he sustained a 20-gauge shotgun blast was inflammatory. *Id.* at 924–25. Second, we determined that its probative value was limited because, while the Commonwealth claimed it showed the death was not a suicide, the defendant had never asserted otherwise. *Id.* at 925. Here, Sargent asserts that the

probative value of photos depicting Williams' dismembered corpse was similarly limited because he stipulated to killing and dismembering Williams and the medical examiner testified to her cause of death and condition of her body. As a result, the photographs "served no purpose other than to incite prejudice." Sargent's Brief at 36. He also argues that evidence of dismemberment was "not in any way probative of his mental state at the time of the killing." *Id.* at 33.

However, in this case, the probative value of the photographs, in conjunction with the trial court's precautionary steps, clearly outweighed the photographs' prejudicial effect. Though Sargent admitted to killing Williams and dismembering her body, the photographs were evidence of Sargent's consciousness of guilt. In particular, they cast doubt upon the existence of Sargent's "honest, bona-fide belief" that Williams posed an imminent danger and instead displayed Sargent's attempt to conceal his crime. *Commonwealth v. Mouzon*, 53 A.3d 738, 752 (Pa. 2012) (quotations omitted). The photographs also helped the jury understand the testimony of law enforcement witnesses who discovered the body parts in the vacant lot.

The trial court also took measures to minimize the inflammatory effect of the photographs. The court only allowed each photograph to be shown to the jury for a few seconds at a time. N.T., 2/28/18, at 24. And, although the photographs were in color, the trial court reasonably determined that Williams' body parts had decayed to such an extent that they were already too

blackened for the injuries to be visible in black and white. Trial Court Opinion, 7/8/21, at 18. Additionally, the trial court issued a limiting instruction to the jury prior to showing the photographs. N.T., 2/28/18, at 21. The instruction explained the purpose of showing the photographs and warned against letting them stir the jury's emotions. Trial Court Opinion, 7/8/21, at 18. Given the probative value of the photographs and the protective measures employed, we conclude that the trial court did not abuse its discretion by admitting the photographs into evidence.

### 3. Testimony of Officer Rosenbaum

Sargent next argues that the trial court erred by allowing Commonwealth witness Officer Stephanie Rosenbaum to present irrelevant testimony. Sargent's Brief at 36. "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." ***Commonwealth v. Bullock***, 948 A.2d 818, 827 (Pa. Super. 2008) (citations omitted). ***See also*** Pa. R.E. 401.

Specifically, Sargent claims that Officer Rosenbaum's descriptions of Williams' masculine appearance were irrelevant. Officer Rosenbaum was familiar with the area where Williams engaged in prostitution and with Williams individually. N.T., 3/5/18, at 53–55. In her testimony, Officer Rosenbaum identified a 2013 photo of Williams and stated that Williams' face was "sometimes unshaven" and that she had a "muscularly toned" build. ***Id.***

at 55–56. Sargent asserts that Officer Rosenbaum failed to specify that Williams appeared unshaven at any time near the night of July 13, 2013 when Sargent picked her up. According to Sargent, Officer Rosenbaum's testimony did not rebut his testimony that he believed Williams was female. It was therefore irrelevant. Sargent's Brief at 38.

Upon reviewing the record, we observe Sargent failed to properly preserve this issue for appeal. While Sargent objected to Officer Rosenbaum's testimony at trial, his objections were based upon allegations of bias and conflict of interest, both of which were overruled. N.T., 3/2/18, at 51–53, 61. Sargent did not object on relevance grounds, either expressly or implicitly, and so the issue is waived. *See Commonwealth v. Cousar*, 928 A.2d 1025, 1041 (Pa. 2007) ("[A] party complaining, on appeal, of the admission of evidence in the [c]ourt below will be confined to the specific objection there made.") (citation omitted); *Commonwealth v. Stoltzfus*, 337 A.2d 873, 881 (Pa. 1975) ("It has long been the rule in this jurisdiction that if the ground upon which an objection is based is specifically stated, all other reasons for its exclusion are waived, and may not be raised post trial.")

Even if Sargent had preserved the issue, Officer Rosenbaum's testimony was relevant to the "heat of passion" element of the voluntary manslaughter

instruction presented to the jury.[5] Under the "heat of passion" partial defense to a murder charge, a defendant may be convicted of voluntary manslaughter rather than murder "if at the time of killing [the defendant] reacted under a sudden and intense passion resulting from serious provocation by the victim." *Commonwealth v. Miller*, 987 A.2d 638, 649 (Pa. 2009) (citation omitted). The jury, if it chose to believe Williams' alleged deception of her biological gender constituted a serious provocation, could have found that Sargent had known or should have realized Williams was a biological male long before he claimed to have been shocked by the discovery. Accordingly, we find no error.

### 4. Testimony of Dr. Albert Chu

Next, Sargent asserts that the trial court erred when it allowed Dr. Albert Chu, the deputy chief examiner, to testify regarding Williams' cause of death. He claims that opinion was dependent on or derivative of Dr. Edward Lieberman's autopsy report, which Dr. Lieberman drafted in 2013 before his retirement. Because Dr. Lieberman was unavailable to testify, Sargent argues

---

[5] The Commonwealth and the trial court assert Sargent's apparently unreasonable belief that Williams was a biological woman undermined his self defense theory, but Sargent claimed he was forced to defend himself after Williams attacked him with a knife. He did not assert that he was justified in using deadly force in response to Williams' alleged deception. Even if Sargent had made such an argument, it would fail on its face regardless of how feminine Williams initially appeared; Sargent's later discovery of her biological gender could not have led him to "reasonably believe[] that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm." *Mouzon*, 53 A.3d at 740 (citation omitted).

that the use of his autopsy report violated his Sixth Amendment Confrontation Clause rights. Sargent's Brief at 39.

Both parties cite extensively to **Commonwealth v. Brown**, in which the Pennsylvania Supreme Court addressed the Sixth Amendment Confrontation Clause implications when an autopsy report written by a non-testifying expert was admitted into evidence. 185 A.3d 316 (Pa. 2018). In **Brown**, the drafter of the victim's autopsy report was unavailable and the Commonwealth offered Dr. Chu, the same medical examiner in this case, to testify to the cause of death. **Id.** at 330. In that case, Dr. Chu based his testimony upon both autopsy photos and written descriptions of wounds contained in the autopsy report. **Id.** at 331. However, Dr. Chu asserted that he reached an independent conclusion as to the victim's death. **Id.** This conclusion was based, at least in part, upon personally observed facts or data (autopsy photographs) and would have been admissible pursuant to Pa. R.E. Rule 703. **Id.** Rule 703 allows an expert to base his opinion on inadmissible evidence so long as "experts in the particular field would reasonably rely upon those kinds of facts or data in forming an opinion on the subject." **Id.** The Court held that, while admitting the autopsy report without the opportunity to cross-examine its drafter violated the Confrontation Clause, the error was harmless given the independent basis of Dr. Chu's testimony. **Id.** at 333.

We agree with the trial court that Dr. Chu's testimony in this case was similar to his testimony in **Brown**. The trial court found that Dr. Chu

supported his determination of Williams' cause of death through his independent examination of photographs and investigators' reports rather than observations and conclusions contained in Dr. Lieberman's autopsy report. Trial Court Opinion, 7/8/21, at 23; N.T., 2/28/18, at 47. Based upon photographs of Williams' skull, Dr. Chu concluded that she died from a penetrating traumatic injury to the head. *Id.* at 60–62. Dr. Chu did not read aloud from Dr. Lieberman's report or reference his findings other than to say that he disagreed with Dr. Lieberman's conclusion that Williams died from blunt force trauma. *Id.* at 58. Neither was the autopsy report itself admitted into evidence, unlike in ***Brown***. Because Dr. Chu's testimony did not rely upon the testimonial elements of Dr. Lieberman's report, and Dr. Chu himself was available for cross-examination, Sargent's Sixth Amendment Confrontation Clause rights were not violated, and the trial court did not abuse its discretion.

### 5. Evidence of Prior Aggravated Assault Conviction

Sargent's final error is that the trial court abused its discretion when it allowed the Commonwealth to cross-examine him about his prior conviction for aggravated assault. Sargent's Brief at 45. In particular, he argues that his testimony did not create a false impression that he was violent, at least any more than the average person. *Id.* at 47.

Evidence of a defendant's character, as indicated by his prior bad acts or crimes, is usually inadmissible to show that he had the propensity to act

similarly in a specific instance. *See* Pa. R.E. 404(b). However, Pennsylvania Rule of Evidence 607(b) and 42 Pa. C.S.A. Section 5918 provide acceptable uses for such evidence. Pa. R.E. 607(b) allows a party to impeach a witness' credibility by presenting any relevant evidence. Under 42 Pa. C.S.A. Section 5918, this evidence can include prior criminal convictions, stating in relevant part:

> No person charged with any crime and called as a witness in his own behalf, shall be asked, or if asked, shall be required to answer, any question tending to show that he has committed, or been charged with, or been convicted of any offense other than the one wherewith he shall then be charged, or tending to show that he has been of bad character or reputation unless:
> (1)  he shall have at such trial, personally or by counsel, asked questions of the witness for the prosecution with a view to establish his own good reputation or character, or has given evidence tending to prove his own good character or reputation.

Once a defendant "opens the door" by "presenting proof that creates a false impression," the statute allows evidence of prior convictions to be introduced during a defendant's cross examination. *Commonwealth v. Nypaver*, 69 A.3d 708, 716 (Pa. Super. 2013).

The trial court found, and we agree, that Sargent's prior conviction was admissible to impeach his assertions of his peaceful nature. Trial Court Opinion, 7/8/21, at 25. Although Sargent testified that he was not aggressive, stating, "I can be aggressive at times like any other person," Sargent also testified to his peaceful, non-violent character. Sargent stated: "I don't just going around hurting people for any or none [sic] reason, non-specific reason;" "I do not go around hurting people. I do not do that. That is not my

agenda;" and "Me, personally, I do not go around hurting people, that's not in me, never was." All of this testimony placed Sargent's unqualified character for peacefulness at issue. N.T., 3/5/18, at 109, 115. These statements, contrary to Sargent's argument, "opened the door" to introduce Sargent's prior conviction for aggravated assault. The trial court also properly issued a limiting instruction to the jury. Trial Court Opinion, 7/8/21, at 26. As Sargent's prior conviction for aggravated assault tended to contradict character evidence that he himself introduced, the trial court did not abuse its discretion by allowing the Commonwealth to raise the conviction pursuant to Pa. R.E. 607(b) and 42 Pa. C.S.A. § 5918.

## Conclusion

Accordingly, for the reasons described above, Sargent's issues on appeal all lack merit. As such, we affirm the sentence imposed by the trial court. Judgment of sentence affirmed. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date:* <u>5/26/2022</u>